UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re: )
 ) Chapter 13
Angela M. Ezell, )
          Debtor. ) No. 04 B 41448

## MEMORANDUM OPINION ON U.S. TRUSTEE'S MOTION FOR DISGORGEMENT OF FEES AND FOR SANCTIONS

This case was filed under Chapter 13 of the Bankruptcy Code, Title 11 U.S.C.

The United States Trustee filed a Motion to compel Debtor's counsel, Timothy K. Liou ("Liou") to disgorge fees received by him and for sanctions. Liou responded to the Motion and hearing was held thereon. The following constitutes Findings of Fact and Conclusions of Law pursuant to which the Motion will be allowed by separate order and a payment of $1,663.91 received by Liou will be disgorged and paid to Debtor.

### Findings of Fact and Conclusions of Law

The Debtor previously filed her first Chapter 13 case (No. 03 B 17903). That case was dismissed pursuant to 11 U.S.C. § 1307(c)(5) on August 13, 2003 after confirmation of her Chapter 13 Plan was denied. Liou received $173 directly from Debtor in that case. Liou filed an application for compensation seeking $2,700 in legal fees. That application was pending at the time the case was dismissed; therefore no order awarding fees was ever entered. The Chapter 13 Trustee made no distributions.

In the present case, on November 9, 2004 (the "Petition Date") Liou did not disclose on Schedule F any debt owed to him by the Debtor for prior attorneys' fees. Instead, Liou listed a pre-petition debt to Kurt J. Kolar, Esq. ("Kolar"), as "assignee to breach of contract," in the amount of $2,341.40. Neither the original nor the amended Statement of Financial Affairs ("SOFA") show any payments made to Liou in the prior bankruptcy case. Also at that time, Debtor filed an application to pay filing fees in installments.

On February 2, 2005, Debtor's Chapter 13 Plan in this case was confirmed. The Plan provided for 60 monthly payments of $202 and proposed a 54.97% dividend to general unsecured creditors. The Plan only repaid general unsecured debt; there was no home mortgage or other secured claims.

1

On January 18, 2005 Liou filed an Application for Compensation seeking total compensation of $2,908.40 ("Application"), which reflected that Liou received $623 in the prior case. On February 2, 2005 Liou's Application was granted and he was awarded compensation.

On May 24, 2006 Liou filed Proof of Claim 5-1 in the amount of $2,625.26 on behalf of Kolar, as "assignee to contract" ("Kolar Claim"). The Kolar Claim was filed well after the claims bar date expired on May 9, 2005, but Liou did not object to the Kolar Claim. On December 5, 2007, he filed a Motion to Extend Time to File Proof of Claim, seeking to have the Kolar Claim treated as timely filed ("Claim Motion"). On January 9, 2008 Liou's Motion was approved.

On March 23, 2010 a discharge order was entered after Debtor completed all Plan payments.

On June 1, 2010 the Chapter 13 Trustee filed his Final Report, indicating in pertinent part that $1,663.41 was paid on the Kolar Claim. Kolar and Liou have since admitted that the $1,663.41 was actually received by Liou.

On June 2, 2010 the Debtor's Chapter 13 case was closed.

On February 15, 2012 the U.S. Trustee filed the Motion to Reopen Chapter 13 Case in light of a statement of charges filed by Judges Wedoff and Hollis regarding Liou's actions in two other cases.

On March 8, 2012 the U.S. Trustee filed his pending Motion for Disgorgement of Fees and Sanctions Against Attorney for the Debtor. On April 27, 2012 Liou filed his Answer to the Motion. The issue presented here turns on the fake Kolar claim that was arranged so that Liou could receive payment on that claim.

### I. ABA Model Rules of Professional Conduct Rule 1.7 Was Not Violated

The first issue is whether the filing of the supposed Kolar claim, which was actually for unpaid fees due Liou from the prior Chapter 13 case, violated any rules of professional conduct; and, if so, whether the $1,663.41 collected from the claim by Liou be ordered disgorged by him as a result. The U.S. Trustee argues Liou had an actual conflict of interest with the Debtor by reason of the claim he held against her. The U.S. Trustee does not cite any particular rule of professional conduct. Local Bankruptcy Rule 9029–4A provides that the "Rules of Professional Conduct for the Northern District of Illinois apply in all proceedings and matters before this court." Under Local Rule 83.50 of the Rules of Professional Conduct for the U.S. District Court,

2

Northern District of Illinois, the applicable disciplinary rules are the ABA Model Rules. ABA Model Rule 1.7 ("Rule 1.7") addresses conflicts of interest regarding current clients.

Rule 1.7(a), with certain exceptions, prohibits a lawyer from representing a client if the representation involves a concurrent conflict of interest. Under Rule 1.7(a)(2), a concurrent conflict of interest exists if there is a significant risk that the representation will be materially limited by a personal interest of the lawyer. Clearly, at the time of the filing of Debtor's second Chapter 13 case, as a creditor, Liou had a personal interest at conflict with Debtor because he sought to collect a prior fee debt from the debtor through facilitating a phony claim by Kolar so as to arrange for collecting his fee. The issue under Rule 1.7 is whether Liou's interest in receiving payment for representation in the prior case materially limited his representation in the second case.

Under reasoning of *In re Gutierrez*, 309 B.R. 488, 497–98 (Bankr. W.D. Tex. 2004), such personal interest is not inherently materially adverse to the debtor except where the attorney fails to advise debtor of the Chapter 7 filing alternative or would be unlikely to object to a claim held by the attorney, unless it would jeopardize plan confirmation. In this case, Liou testified that he advised Debtor of the conflict and all her options, including filing a Chapter 7, and Debtor gave her oral informed consent despite the conflict and made the informed decision to pursue the Chapter 13 case. Of course, we only have Liou's version of the events, as there is no record that Debtor gave such consent.

Liou denies that he had an actual conflict of interest with Debtor or that he affirmatively concealed any actual conflict of interest. Liou argues that Kolar was listed as an "assignee," consistent with Kolar's role as a "nominal assignee," which Liou believed to be a lawful arrangement. Liou asserted that this assignment was authorized by the Chapter 13 Trustee to avoid the appearance of impropriety for claim processing purposes, but that assertion was false. The Chapter 13 Trustee representative credibly denied suggesting to Liou that he should use assignments as a way of handling his own claims for prior fees. Rather, the representative stated that he told Liou that if Liou was in any way connected to a claim by another, the Chapter 13 Trustee would object to the claim.

Liou claims that he did not condition his continued representation of repeat debtors upon the payment of fees for prior cases, but that debtors "appreciated his representation" and "wanted to pay the balance." Liou contends that he would have represented the debtors whether or not

3

they paid the prior case fees prior to filing the current case. Liou claims that he asked debtors to "pay whatever they're able."

Liou relies on the Illinois Rules of Professional Conduct ("IRPC") Rule 1.7, under that rule, the issue is also whether Liou's representation of Debtor was "materially limited" by his personal interest in relation to his claims for prior fees. He argues that, other than in a 100% plan (which Debtor did not file here), the addition of Liou's claim for prior fees would not add anything to the amount a debtor ultimately pays to complete the plan.

Liou contends also that he obtained an informal oral, but not written, conflict waiver from Debtor. Liou states that he had lengthy waiver conversations, which included a discussion as to what generally is a conflict of interest and the specific potential conflict between him and Debtor. We only have Liou's testimony as to this procedure and the ultimate oral waiver; no record was kept. Liou testified that in this case, Debtor chose to proceed under Chapter 13 because she had substantial overdue parking citations exceeding $10,000, and in order to keep her driver's license valid, was required to make payments toward those citations. Liou correctly points out that IRPC Rule 1.7(b) allows a client to waive a conflict and that a written waiver is not required.

*In re Gutierrez*, 309 B.R. 488 (Bankr. W.D. Tex. 2004) is cited by Liou for the proposition that there is value in having the same attorney represent a debtor in successive bankruptcy filings and a claim for prior case fees does not necessarily create an adverse interest. In that case, the attorney filed his own claim for prior case fees in his name. *Id.* at 490. The Opinion stated that a claim for prior case fees doesn't create a *per se* materially adverse interest to debtor client except in two circumstances, to wit (1) where an attorney fails to apprise the debtor of the availability, if appropriate, of proceeding under Chapter 7, because of the attorney's desire to obtain payment of his claim, and (2) where debtor's attorney would be unlikely to object to a claim held by the attorney. *Id.* at 497–98. From the debtor's point of view, the total payments required under a plan are usually the same with or without the attorney's claim, although the payout to other creditors would be higher without such claim. *Id.* Yet, the Opinion admonished against an attorney insisting on having its outstanding prior case fees paid before filing a new case. *Id.*

Liou also cites *In re Holland*, 374 B.R. 409 (Bankr. D. Mass. 2007) for the proposition that there is no inherent conflict where the attorney for a Chapter 13 debtor applied for

compensation and reimbursement in connection with debtor's current and one prior case. In that case, the attorney did not file a proof of claim for prior case fees. *Id.* at 433. The Opinion acknowledged that the attorney was a creditor at commencement of the pending case and, if attorney had filed a claim, it would have been deemed allowed in the absence of an objection. *Id.* Nevertheless, the Opinion was satisfied, based on the representations made by the U.S. Trustee, that any conflict of interest between debtor's counsel and debtor was subsequently waived by her. *Id.*

In this case, Liou's personal interest in collecting his fee balance in the prior bankruptcy case created the risk that his representation of Debtor in the second bankruptcy case would be or was actually materially limited by requiring payment of a fake claim that went to the lawyer. But Liou provided uncontroverted testimony that he obtained Debtor's informed waiver of such conflict, which Debtor did not contradict by testimony.

## II. Cancellation of Fee Agreement and Disgorgement of All Compensation Not Required Under 11 U.S.C. § 329

The second issue is whether Liou's fee agreement should be canceled and all compensation in the amount of $2,908.40 for the 2004 case be ordered disgorged under 11 U.S.C. § 329. Section 329 provides that, to the extent an attorney representing a debtor receives compensation that exceeds the reasonable value of services rendered, the court can cancel the attorney-client fee agreement and order the fees disgorged to the extent they are excessive. The U.S. Trustee argues that the value of Liou's services were not reasonable because of the alleged conflict of interest with Debtor. The U.S. Trustee also contends that Liou affirmatively concealed this actual conflict by filing his claim in the name of Kolar, although Kolar held no interest in and was actually paid nothing for the claim. Liou prepared the Schedule F falsely listing Kolar as a creditor, a document which Liou knew Debtor would be required to attest to under penalty of perjury, which Debtor did by signing the petition. These actions, according to the U.S. Trustee, indicate Liou's services were not of value to Debtor.

The U.S Trustee relies on *Woods v. City Nat'l Bank & Trust Co.*, in which the Supreme Court noted that "'reasonable compensation for services rendered' necessarily implies loyal and disinterested service in the interest of those for whom the claimant purported to act." 312 U.S. 262 (1941) (citing, *American United Mut. Life Ins. Co. v. Avon Park*, 311 U.S. 138 (1940) (when a claimant is "subject to conflicting interests, he should be denied compensation. It is no answer

5

to say that fraud or unfairness were not shown to have resulted.")). That case was decided under the Chandler Act, a predecessor to the Bankruptcy Code. The U.S. Trustee argues that the principle remains applicable. However, the usual means for challenging attorneys' fees paid or due is under 11 U.S.C. §§ 329 and 330. *See also In re Wiredyne, Inc.*, 3 F.3d 1125, 1127 (7th Cir. 1993) ("[I]n order to challenge the attorneys' fees paid, or owed, for services performed prior to the order for relief, one must rely on section 329 of the Code.")

Under 11 U.S.C. § 329(b), the court can cancel an attorney-client fee agreement and order the fees disgorged to the extent that compensation received exceeds the reasonable value of services rendered. In making such determination, the court is to be guided by 11 U.S.C. § 330 which sets forth a number of factors that Congress found relevant to an assessment of the value of the services. *In re Wiredyne, Inc.*, 3 F.3d 1125, 1127 (7th Cir. 1993). That section provides that reasonable compensation for an attorney's services depends on

> . . . the nature, the extent, and the value of such services, taking into account all relevant factors, including –
> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed . . .
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

The U.S. Trustee has not made any specific allegations as to why he believes the compensation approved by the court in this case is unreasonable, other than the alleged conflict of interest regarding the claim for fees in the prior case discussed above and Liou's actions to conceal his claim. He does not argue that the time spent was excessive, that the rates charged were out of line, that the services performed were not necessary, or for any other reason listed in § 330. Indeed, approval of Liou's Application herein, the lack of an objection by the Chapter 13 Trustee, and Debtor's successful completion of plan payments and discharge indicate that the usual compensation of $3,500 requested was reasonable and the services provided by Liou were valuable to Debtor.

6

The Seventh Circuit has noted that "[t]he existence of a conflict of interest is certainly a relevant factor in the analysis [under § 330] and is a justifiable reason to reduce or require disgorgement of attorneys' fees. . . ." *In re Wiredyne*, 3 F.3d 1125, 1127 (7th Cir. 1993).

The deceptive claim was used as Liou's way of collecting fees due in a prior case thus adding to the totality of fees collected in this case. In that sense, the total compensation Liou received exceeded the reasonable value of services rendered in the second bankruptcy case, which would require disgorgement under Code § 329 of the additional amount thereby collected.

### III. Imposition of Sanction under 11 U.S.C. § 105(a)

Whether or not the rules discussed require disgorgement, the court should, pursuant to inherent powers under 11 U.S.C. § 105(a), impose sanctions on Liou for failing to disclose his status as a creditor and affirmatively hiding that status by filing a fake Kolar claim that was really Liou's claim.

Liou affirmatively concealed his status as a creditor by purportedly assigning his claim to Kolar and filing a claim in Kolar's name even though the payment on the claim to Kolar was actually for Liou. Thus, Liou perpetrated a fraud on the court, trustee, creditors, Debtor and the bankruptcy system as a whole. While Liou's bad faith filing of a petition with Schedule F omitting his name as a creditor violates Federal Rule of Bankruptcy Procedure Rule 9011, the totality of the acts involved in Liou's deceptive scheme are appropriately redressed through sanctions emanating from 11 U.S.C. § 105 and the court's inherent powers. *In re Volpert*, 110 F.3d 494, 500 (7th Cir. 1997) (11 U.S.C. § 105 furnishes the bankruptcy judges with ample authority to sanction conduct that abuses the judicial process). *See also In re Rainbow Magazine*, 77 F.3d 278 (9th Cir. 1996) (11 U.S.C. § 105 gives bankruptcy judges the power to issue orders necessary to prevent an abuse of process) and *In re Courtesy Inns, Ltd.*, 40 F.3d 1084, 1089 (10th Cir. 1994) (11 U.S.C. § 105 is "intended to imbue the bankruptcy courts with the inherent power [to sanction] recognized by the Supreme Court in *Chambers* [501 U.S. 32 (1991)]").

Liou argues that the evidence shows an absence of intentional wrongdoing and therefore sanctions are inappropriate citing *In re CMGT, Inc.*, 458 B.R. 473, 492 (Bankr. N.D. Ill. 2011) (Squires, J.) In that case, the bankruptcy judge stated that despite the open-ended language of § 105(a), courts must exercise caution to limit the circumstances under which the statute is used. *Id.* However, "[s]anctions are justified under § 105(a) where the sanctioning court has clearly

Case 04-41448    Doc 55    Filed 10/25/12    Entered 10/29/12 09:20:51    Desc Main
Document    Page 8 of 11

found that a litigant intentionally abused the judicial process in an unreasonable and vexatious manner." *Id.* (quoting *In re Collins*, 250 B.R. 645, 657 (Bankr. N.D. Ill. 2000)).

Liou argues he did not intentionally omit such fee receipt on the SOFA and was not trying to conceal such payment. He compares his situation to that of the attorney in *In re Gage*, 394 B.R. 184, 193–95 (Bankr. N.D. Ill. 2008). In that case, the bankruptcy judge found the attorney engaged in a pattern of filing false Rule 2016(b) Statements, but did not find corroborating evidence to show his conduct was intended to defraud. *Id.* at 195. However, the attorney in that case refunded all fees ($4,057) received from the debtor, plus an additional $500 for the time the trustee expended in the matter, as well as reached settlement with the trustee on other cases. *Id.* at 193.

Liou stated that he only became aware of any problem concerning the absence of information on the SOFA in February of 2009. Judge Goldgar there pointed out in another case that SOFA question nine was not duplicative of a Rule 2016(b) Statement, because the former is the debtor's statement, while the latter is the attorney's statement. *See In re Joe C. Jackson*, No. 08 B 20776, slip op. at 10 (Bankr. N.D. Ill. Feb. 27, 2009) (Goldgar, J). After that incident Liou says that he has endeavored to complete the SOFA properly.

Liou also denies any intent to deceive in using the "nominal" assignment to Kolar of the fee due to him to file a claim in this case for the remaining fee balance from the prior case. Liou states that his office filed the claims using his CM/ECF user name and password, often had open contact with the Chapter 13 Trustee's office to inquire about the status of payment of such claims, and endorsed the Chapter 13 Trustee's checks. Liou admits that "after [Liou's] bank stopped accepting double-endorsed checks, Kolar began depositing the Trustee's checks in his client funds account and writing checks to [Liou] in the same amount."

Liou also claims he had a "good faith belief, not only that the Trustee desired this method as a means of avoiding the appearance of a conflict, but that [such "nominal" assignment] was the least problematic solution to a dilemma created by the requirement of scheduling claims and the possible tax complications of simply 'erasing' the debt." Liou cited *Aquila, LLC v. City of Bangor*, 640 F. Supp. 2d 92 (D. Me. 2009) for the proposition that the use of nominal assignments for purposes of litigation is not unusual. In that case, defendant moved for summary judgment after the plaintiff's insurer paid plaintiff for loses on claim because the plaintiff was not the "real party in interest" for purposes of prosecuting the case. *Id.* at 99. The Opinion in

8

*Aquila* accepted as an effective ratification under Rule 17 an Assignment by the insurer to plaintiff of its right to seek recovery for policy benefits and expressly acknowledged that the plaintiff had the right to sue in the insurer's name. *Id.* at 101. In the Assignment, the plaintiff agreed to pay the insurer the amount recovered less attorney's fees and costs to prevent multiple suits and to accord appropriate *res judicata* effect to litigation. *Id.* However, that case has no relevance here because the insurer in *Aquila* had subrogation rights and the assignment was made to comply with "real party in interest" requirement pursuant to Fed. R. Civ. Proc. 17(a).

Finally, Liou states that he no longer uses assignments of claims for prior attorneys' fees and that he now exercises increased oversight of petition schedule and statement filings. He also states that he "limits any payments he accepts from debtors within the preference period to an amount which, by law, does not constitute an avoidable preference." Liou contends that over a nine year period, he has collected only $8,308.84 in payments from the Chapter 13 Trustees with respect to the "nominally-assigned" claims. In short, he implies that he should be given a pass here because he collected "only $8,308.84" through false claims that he arranged.

Liou asserts that his intent was to avoid the "appearance of impropriety created by having his name connected with claims for prior fees" by assigning the claim to a third party for the sole purpose of collecting on such claim in someone else's name. He is blind to the impropriety of that activity.

Although the U.S. Trustee argues that the bad faith filing of a petition with Schedule F omitting Liou's name violated Fed. R. Bankr. Proc. 9011, he seeks sanctions under 11 U.S.C. § 105(a) rather than relying on Rule 9011. The language of § 105(a) furnishes the bankruptcy courts with ample authority to sanction conduct that abuses the judicial process, including conduct that unreasonably and vexatiously multiplies bankruptcy. *In the Matter of Volpert*, 110 F.3d 494, 500 (7th Cir. 1997).

## Conclusion

"O what a tangled web we weave.
When others we practice to deceive."
– Anon.

Liou deserves sanction for his intentional abuse of the judicial process by requiring him to disgorge the monies received through use of the fake Kolar Claim to receive payment due to him for unpaid fees due in the prior bankruptcy case, *i.e.*, $1,663.41.

Liou testified that it was not his intent to deceive the court in this case or the other questioned cases by listing his claim for prior case fees in Kolar's name, even though his office filed the Kolar claim and endorsed to Liou some checks paid on the claim. Rather, he claims he had a good faith belief that he needed to file the claims in the name of a nominee to "avoid the appearance of impropriety" and for procedural reasons based on purported discussions with a representative of the Chapter 13 Trustee. However, that representative credibly denied Liou's version of their discussion, and testified that he told Liou that "if he was in any way connected, that we would object to the claim because it's improper." So, Liou knew that the Chapter 13 Trustee would have objected to the claim for the prior case fees if he filed the claim in his own name. Liou's attempt to cast the burden of his wrongdoing on the Chapter 13 Trustee's representative only magnified his wrongdoing and shows that he did not act in good faith at all.

Liou's response to the warning of that representative was to go through the motions of finding a "nominee," filing a fake claim in the nominee's name, and couching the basis for the claim as "assignee to breach of contract." The monies collected on the claim were paid over to Liou. As a result, he was still connected to the claim, which the Chapter 13 representative warned him was viewed as improper.

There is ample basis under § 105 to sanction Liou for his intentional abuse of the judicial process by requiring repayment to Debtor of the monies received under the Kolar Claim that actually represented Liou's effort to collect unpaid fees of $1,663.41 due to him in the prior bankruptcy case. Whether or not the technical rules ethical rules were violated, Liou's efforts to conceal his claim by filing phony claims must be addressed under § 105. Falsifying or causing others to falsify bankruptcy schedules or claims cannot be tolerated. Doing that will be sanctioned by this court.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 25th day of October, 2012.

Case No. 04 B 41448
In re: Angela M. Ezell
Updated October 23, 2012

## CERTIFICATE OF SERVICE

I, Angela Snell, certify that on October 25, 2012, I caused to be served copies of the foregoing document to the following by U.S. Mail, and by electronic mail to those who have consented to such service.

_____
Law Clerk

## SERVICE LIST

### Electronic Service through CM/ECF System

Timothy K. Liou
900 West Washington Blvd.
Chicago, IL 60607-2298
Respondent/Attorney for Debtor

Jeffrey Snell
Office of the U.S. Trustee, Region 11
219 S Dearborn St
Room 873
Chicago, IL 60604

Steven Shebar
738 Wesley Ave.
Oak Park, IL 60304
Attorney for Respondent

Tom Vaughn
55 East Monroe St., Suite 3850
Chicago, IL 60603
Chapter 13 Trustee

### First Class Mail

Angela M. Ezell
5955 West Iowa St.
Chicago, IL 60651-2518
Debtor